IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| ROSARIO MARQUEZ, *et al., individually and on behalf of others similarly situated*, <br><br> *Plaintiffs*, <br><br> v. <br><br> BALFOUR BEATTY CONSTRUCTION, LLC, *et al.*, <br><br> *Defendants.* | Civil Action No.: 1:24-cv-00352 (MSN/WBP) |

**CONSENT MOTION FOR APPROVAL OF FLSA SETTLEMENT AND INCORPORATED MEMORANDUM OF LAW**

Plaintiffs in this case allege violations of the federal Fair Labor Standards Act ("FLSA") and related Virginia wage and hour statutes. The Parties have now agreed, subject to Court approval, to settle this matter for a total payment by Defendants of $39,000.00 to Plaintiffs to fully and finally resolve all of Plaintiffs' claims, including for damages and attorneys' fees. Plaintiffs, with Defendants' consent, now seek court approval of this settlement, which they believe to be fair and reasonable. A copy of the proposed settlement is provided to the Court as an attachment to this Motion.

**Overview and Factual Background**

This case was brought as a collective action, in accordance with the collective action procedure courts have recognized as having been established by the FLSA. The proposed settlement encompasses the claims of the three named Plaintiffs, Rosario Marquez, Saul Flores and Deodoro de Leon, and five other similarly situated individuals, Cleofas de Leon, Cruz de Leon, Israel de Leon, Miguel Vasquez, and Elder Rivas.

Plaintiffs' claims arose from work performed at a construction project in Arlington, Virginia. Plaintiffs were not paid anything for approximately 5-and one-half days of work on that project. Their direct employer was Colmex Contracting, Inc., an entity which is not a defendant in this case and which appears to be insolvent. Colmex was a subcontractor of Defendant C.J. Coakley Co., Inc. ("Coakley") and Coakley, in turn, was a subcontractor of Defendant Balfour Beatty Construction, LLC ("Balfour Beatty"), the project's general contractor. Plaintiffs alleged that Coakley was legally obligated to pay them the wages they should have been but were not paid, and additional liquidated damages, on the grounds that, in their view, Coakley controlled the work of Plaintiffs to such an extent that it qualified as a joint employer under applicable law. Plaintiffs also asserted that Balfour Beatty was also liable to them for these wages and additional damages under Virginia law because of its status as the project's general contractor. Defendants, however, vigorously denied any liability to Plaintiffs.

Plaintiffs' counsel believes that there are some twenty or thirty additional workers situated similarly to lead plaintiffs who are not participating in this settlement. Counsel had anticipated that most or all of these individuals would become opt-in Plaintiffs. However, upon learning of this lawsuit, Coakley offered to pay Colmex workers, other than the named Plaintiffs, the unpaid wages that they were owed in return for a release of their claims. Workers who accepted this offer were, in fact, paid what Coakley promised to pay them.

Participants in the current settlement opted not to receive a payment from C.J. Coakley. If the settlement is approved, they will receive the amount that they should have been paid for the days they were not paid plus an additional equal amount in recognition of their potential claim for liquidated damages. In other words, they will receive twice the amount that they would have received if they had opted not to participate in this lawsuit.

Considerable work by Plaintiffs' counsel was required to obtain the settlement now before the Court. Among this work was meeting and discussing the case with more than 20 workers on the project, who were potential plaintiffs and potential witnesses, obtaining and analyzing discovery relating to hours worked from Defendants, keeping lead Plaintiffs and opt-in Plaintiffs informed of the status of this matter, negotiating the principal material terms of a settlement, negotiating the detailed provisions of a written settlement agreement, and preparing this Motion for settlement approval.

Papering the settlement took considerable attorney time as counsel for both sides vigorously advocated for their clients' interests. This included negotiations over certain non-monetary provisions proposed by defense counsel, who are highly skilled and experienced in wage and hour litigation, which went beyond what the parties had initially discussed when agreeing to the monetary terms of the settlement. In Plaintiffs' counsel's view, this complicated the papering process. This, it should be noted, is surely not a view shared by counsel for Defendants. In the end, counsel for both sides, working together cooperatively and professionally, were able to fully resolve all relevant issues.

Significantly, Plaintiffs' counsel carried out their duties in a way that minimized fees on their side, consistent with their obligations to their clients. Nearly all attorney work on Plaintiffs' side was done by Matthew B. Kaplan, an experienced wage and hour practitioner. Mr. Kaplan speaks Spanish the principal language of all settlement participants.

The settlement provides that Plaintiffs will be paid a total of $16,836.00, which will be allocated between them in proportion to the amount of their unpaid wages. Through July 22, 2024, Plaintiffs' counsel's total attorneys' fees (counsel's "lodestar") is $ 30,115 and their

expenses (mostly filing and service fees) are $565, for a total of $30,680. Under the settlement they will receive $22,164.00, 72.2% of their total lodestar and fees.

## Legal Analysis

In *Lomascolo v. Parsons Brinckerhoff, Inc.*, No. 1:08-cv-1310, 2009 U.S. Dist. LEXIS 89136, at *29 (E.D. Va. June 23, 2009) (citing *Flinn v. FMC Corp.*, 528 F.2d 1169, 1173-74 (4th Cir. 1975)), this Court discussed six factors that may be relevant in determining whether an FLSA settlement should be approved. Those factors are: (1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiffs; (5) the opinions of class counsel and class members after receiving notice of the settlement whether expressed directly or through failure to object; and (6) the probability of plaintiffs' success on the merits and the amount of the settlement in relation to the potential recovery. These factors are analyzed below.

(1)     The extent of discovery that has taken place.

Although no formal discovery has occurred, the parties exchanged information and calculations relating to time worked by Plaintiffs (including opt-in Plaintiffs). In Plaintiffs' counsel's view, it is not likely that additional material written documents could have been obtained through formal discovery.

(2)     The stage of the proceedings, including the complexity, expense, and likely duration of the litigation.

The settlement was obtained early in the process, before Defendants were required to file an answer. This is a good thing. While further litigating this case would have significantly

4

increased attorneys' fees on both sides, it would not likely have increased Plaintiffs' recovery and it certainly would have delayed payment to them of that recovery.

(3)     The absence of fraud or collusion in the settlement.

Nothing in the record suggests fraud or conclusion.  Counsel on both sides are experienced and respected in the legal community.

(4)     The experience of counsel who have represented the plaintiffs.

Plaintiffs are represented by experienced lawyers who have litigated numerous wage and hour cases.

(5)     The opinions of class counsel and class members after receiving notice of the settlement whether expressed directly or through failure to object.

Plaintiffs' counsel believes that persons who signed the settlement constitute 100% of persons situated similarly to the named Plaintiffs who have not opted to accept a payment directly from Defendants.  In other words, it appears that all those eligible have opted to participate in the settlement.

(6)     The probability of plaintiffs' success on the merits and the amount of the settlement in relation to the potential recovery.

If this matter had been fully litigated it seems unlikely that plaintiffs would have recovered more than the double damages—two times the amount they were underpaid—that is provided for in the settlement.  Virginia Code § 40.1-29(J) provides for treble damages when an employer "knowingly" fails to pay wages owed.  But in this case Defendants would have a compelling argument that only Plaintiffs' now-defunct direct employer, Colmex, engaged in knowing misconduct.

Indeed, if this matter had been fully litigated, Plaintiffs might have recovered nothing. Balfour Beatty would surely have cited to Virginia Code 11.4.6(C)(4) to argue that it could not be held liable as a general contractor because Plaintiffs could not "demonstrate[] that the general contractor knew or should have known that the subcontractor was not paying his employees all wages due," a prerequisite for general contractor liability under Virginia law. And Coakley would undoubtably have argued that it was not a joint employer and, consequently, had no liability for payment of the wages that Colmex failed to pay.

In addition to unpaid wages, there was some evidence that some Plaintiffs were not paid the correct overtime premium for a handful of hours. But even if overtime work could have been proven—it was poorly documented—it likely would not have materially affected Plaintiffs' recovery.

Given the facts and the appliable law, the proposed settlement is an excellent settlement for Plaintiffs.

In addition to the payments that will be received by the settlement participants, counsel for Plaintiffs believe that, as a practical matter, the bringing of this lawsuit catalyzed Coakley's payment of wages to Colmex workers who opted not to join this lawsuit. This consideration further supports a determination that the settlement should be approved.

## Conclusion

For these reasons the settlement should be approved.

The statements and arguments set out in this Motion are attributable only to Plaintiffs. Defendants, however, agree that the Settlement should be approved.

In addition to the proposed settlement, the opt-in forms of the Opt-In Plaintiffs also accompany this filing

Dated:  July 23, 2024    Respectfully submitted,

/s/ Matthew B. Kaplan
Matthew B. Kaplan, VSB # 51027
THE KAPLAN LAW FIRM
1100 N Glebe Rd, Suite 1010
Arlington, VA 22201
(703) 665-9529
mbkaplan@thekaplanlawfirm.com
*Counsel for all Plaintiffs*

Rachel Nadas, VSB # 89440
Matthew K. Handley (pro hac vice)
HANDLEY FARAH & ANDERSON PLLC
200 Massachusetts Avenue, NW
7th Floor, Washington, DC 20001
Telephone:202-899-2991
email: rnadas@hfajustice.com
*Counsel for all Plaintiffs*

## **CERTIFICATE OF SERVICE**

On the date indicated below, I filed the foregoing document (and any accompanying documents) with the Court's CM/ECF system, which will serve it on all counsel of record in this matter.

/s/ Matthew B. Kaplan
Matthew B. Kaplan
July 23, 2024